IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA MELLIN, | ) | |
| | ) | |
| Plaintiff, | ) | No.   19-cv-6799 |
| | ) | |
| v. | ) | Honorable Matthew F. Kennelly |
| | ) | |
| CAROL FOX & ASSOCIATES, INC., | ) | Magistrate Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |

## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, Carol Fox & Associates, Inc. ("Fox"), by its attorneys, Steven P. Mandell and Brian D. Saucier of Mandell Menkes LLC, moves for judgment in its favor and against Plaintiff, Joshua Mellin ("Mellin") on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c), and in support states:

## NATURE OF THE ACTION

1. Mellin has brought this claim for copyright infringement, alleging that Fox reproduced and publicly displayed, without his permission, four photographs he took of a public art project known as Art on the MART (the "Photographs"). (Compl. ¶¶ 1, 8). He claims to have registered the Photographs with United States Copyright Office before filing this suit. (Compl. ¶ 9). On December 12, 2019, Fox filed its Answer and Affirmative Defenses to the Complaint. (Document # 14).

2. At the December 20, 2019 Rule 16(b) status hearing, the Court ordered the parties to meet to discuss the possibility that the Court could assess and adjudicate key defense contentions, *e.g.*, that Fox was licensed to make the reproductions and displays at issue in the Complaint, without the need for expensive discovery. The Court directed the parties to file a

Joint Status Report on this issue (Document # 15), which the parties did on January 21, 2020 ("Joint Status Report") (Document # 16).

3. In their Joint Status Report, the parties agreed that a Rule 12(c) Motion for Judgment on the Pleadings filed by Fox "based upon the Plaintiff's Complaint, Defendant's Answer and Affirmative Defenses, and exhibits thereto, would be a proper procedural means to permit this Court to potentially assess and adjudicate the affirmative defenses of license and lack of consideration raised by Defendant." (Document #16, ¶ 4). *See also*, *Laverty v. Smith & Nephew, Inc.*, 197 F. Supp. 3d 1026, 1029 (N.D. Ill. 2016) ("when all relevant facts are presented, the court may properly dismiss a case before discovery – typically through a Rule 12(c) Motion for Judgment on the Pleadings -- on the basis of an affirmative defense").

4. The Court granted Fox leave to file an Answer and Amended Affirmative Defenses (Document # 17), which Fox did on February 5, 2020 (Documents # 18).

5. Fox's Answer and Amended Affirmative Defenses include the defenses that (1) Mellin granted Fox a license to use the Photographs without restriction (First Affirmative Defense) and (2) any later attempt by Mellin to impose restrictions on Fox's use of the Photographs was not supported by consideration and that, therefore, any such restrictions are unenforceable (Second Affirmative Defense). Fox attached e-mails between Fox and Mellin as an exhibit to its Amended Affirmative Defenses (Document # 18-1) and such e-mails may properly be considered by the Court in ruling on the Rule 12(c) motion for judgment on the pleadings. *Northern Indiana Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) ("Rule 12(c) permits a judgment based on the pleadings alone. The pleadings

include the complaint, the answer, and any written instruments attached as exhibits.") (internal citation omitted).[1]

      6.      The e-mails attached as Exhibit A to Fox's Answer and Amended Affirmative Defenses clearly and uncontrovertibly set forth communications between Mellin and Fox that establish a license for Fox to use the Photographs and defeat Mellin's claim of copyright infringement. (Document # 18, Answer and Amended Affirmative Defenses to Complaint, First Affirmative Defense, ¶¶ 1-3 and Document # 18-1, Exhibit A thereto). Specifically:

      a.      On September 26, 2018 at 12:45 p.m., Mellin introduced himself by e-mail with a subject of "Art on theMart [sic] press request: Joshua Mellin" and inquired "if it might be possible to obtain press access for opening night of Art on the Mart this weekend to take some high quality images for potential editorial stories?" Mellin then unilaterally offered that if granted access, he was "willing to share my images for your use, or to make art prints available at cost, with credit of course." Mellin's e-mail contained no further limitations or conditions on any use of the images by Fox.

      b.      Six minutes later, at 12:51 p.m. on September 26, 2018, a representative of Fox agreed to Mellin's request, responding that Fox was "happy to provide you access to photograph the opening launch of Art on theMART [sic] this Saturday [*i.e.* September 29, 2018]" and that Mellin would "receive a badge" and should use a designated entrance.

      c.      On September 29, 2018, at 9:16 p.m. (*i.e.* later in the evening of the event), within the same e-mail chain, Mellin sent an e-mail to Fox with links to "photos I edited quickly **for social media**" (emphasis added), including the Photographs, stating, *inter alia*, "Thanks again for including me this evening!" Thus, Mellin's e-mail acknowledged that he

---

[1] The Court may consider the emails for the additional reason that Mellin's counsel agreed during the December 20, 2019 Rule 16(b) status hearing and in the Parties Joint Status report that the Court could consider them as part of this Rule 12(c) motion.

3

received the benefit of the bargain he struck with Fox and, again, did not include any conditions or limitations on Fox's use of any images that he provided after he "edited [the images] quickly for social media."

    d.    The next day, September 30, 2018 at 9:07 a.m., Mellin again e-mailed Fox within the same e-mail chain, and included a link to "a gallery" of images, including the Photographs. Again, Mellin did not impose any limitation or condition on Fox's use of the images that he provided to Fox.

    7.    The e-mails between the parties make clear that Mellin initiated the contact with Fox in an effort to obtain special press access to the opening night event for Art on the Mart, that he agreed to provide the resulting Photographs for Fox's use, that he received badged access to the event as he requested, that he attended and photographed the event, and that he then sent links on two occasions to Fox to access the Photographs "for social media" use, all without ever imposing any limitation or condition on Fox's use other than receiving accreditation.

    8.    By the clear and indisputable terms of the e-mails, Mellin granted Fox a license to use the Photographs in exchange for access to the Art on the Mart event. The law is clear that a non-exclusive license to use a copyrighted work may be made orally or implied by conduct. *E.g. I.A.E, Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). Moreover, consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license. *Id.* In this case, the license was not only implied by Mellin's conduct in sending the links, but was explicitly stated in written e-mails that contained no condition or limitation other than that Mellin be credited.[2]

---

[2] In *I.A.E, Inc.*, the question before the Court was whether a license was impliedly granted by an architect to a construction company that hired him to prepare drawings. The Court identified a three-part test, the first prong of which was that "a person (the licensee) requests the creation of the work." 74 F.3d

9. The law is also clear that a non-exclusive copyright license is irrevocable when consideration is given in exchange for the license. *LimeCoral, Ltd. v. CareerBuilder, LLC*, 889 F.3d 847, 851 (7th Cir. 2018), *citing* Melville B. Nimmer & David Nimmer, 3 *Nimmer on Copyright* § 10.02[B][5] (2019). In this case, Fox provided consideration to Mellin when Fox granted Mellin his requested access to the Art on the Mart event that Mellin otherwise did not have, provided him with a badge and placed him on a "press RSVP list" to gain special access. Once Mellin granted the license, and he received and utilized the access he requested from Fox in exchange, Fox was free to use the resulting Photographs and the license to Fox became irrevocable.

10. A similar set of circumstances arose in *Joseph v. Buffalo News, Inc.*, 2019 U.S. App. LEXIS 35105 (2nd Cir. Nov. 25, 2019) (summary order). In that copyright infringement case, the plaintiff writer submitted an article to the defendant by e-mail "with a short message describing the piece, but no mention of any expectation to be compensated for its publication." *Id.* at \*2. A news editor for the defendant responded that the paper "may have a spot for this", to which the plaintiff responded "Great. Thanks." *Id.* at \*2-3. After publication, the plaintiff sent the paper an invoice demanding compensation and then sued for copyright infringement. *Id.* The court held that by sending the article to the paper and responding "without qualification" to the

---

at 776. However, as noted in *Malibu Media, LLC v. Doe*, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at \*15 (N.D. Ill. June 9, 2014) (Kennelly, J.):

> It does not appear to the Court that the three-part test referenced in *Kennedy* and *I.A.E., Inc.* describes the only way to establish an implied license. In *Baisden v. I'm Ready Prods.*, 693 F.3d 491 (5th Cir. 2012), for example, the Fifth Circuit indicated that all that is needed to show an implied license is that the "totality of the parties' conduct indicate[d] an intent to grant such permission." *Id.* at 501 (internal quotation marks omitted). In addition, the Seventh Circuit stated in *I.A.E., Inc.* that relevant intent "is not the parties' subjective intent but their outward manifestation of it." 74 F.3d at 777.

5

paper's statement of intent to publish it, the plaintiff granted a nonexclusive license authorizing publication. *Id.* The court further held that "if [plaintiff] wanted to impose a condition on his authorization to publish . . . it was incumbent upon him to do so prior to the publication." *Id.*

11. In the instant case, it was incumbent upon Mellin to impose any conditions on publication of the Photographs *before* he was given and fully exploited the consideration he requested – *i.e.*, the press access to the event that enabled him to take the Photographs. Mellin unilaterally offered use of the images in exchange for access, received the access, and then provided the images "for social media" without ever mentioning a limitation on the specific social media. Instead, Mellin chose to assert the purported limitations and conditions that he relies upon in his infringement action for the very first time in an October 3, 2018 e-mail, several days *after* he had already requested, received, and exploited the access to the Art on the Mart event.[3]

12. Mellin's after-the-fact attempt in his October 3, 2018 e-mail to unilaterally alter the license and impose conditions and/or limitations, prohibiting Fox from using the Photographs on the Facebook and Twitter platforms, was too late. Moreover, Mellin's attempted restrictions – raised only after he received the access he requested – were not supported by any consideration to Fox. Such conditions are therefore unenforceable.

---

[3] In the post that Mellin claims is infringing (Complaint, Exhibit C), Fox thanks Mellin and gives him explicit credit "for taking these beautiful images." For the Court's convenience, the relevant portion of Exhibit C is enlarged and reproduced as Exhibit 1 to this motion.

WHEREFORE, Defendant, Carol Fox & Associates, Inc. respectfully requests that the Court enter judgment in its favor, award its costs of suit including reasonable attorneys' fees, and grant all other relief the Court deems just and appropriate.

Dated: February 27, 2020

Respectfully submitted,

Carol Fox & Associates, Inc.

By:   /s/ Steven P. Mandell
      One of its attorneys

Steven P. Mandell (ARDC No. 6183729)
(smandell@mandellmenkes.com)
Brian D. Saucier (ARDC No. 6226006)
(bsaucier@mandellmenkes.com)
MANDELL MENKES LLC
One North Franklin St.
Suite 3600
Chicago, IL 60606
(312) 251-1000

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served on February 27, 2020 via Court's CM/ECF system on all counsel of record who have consented to electronic service.

/s/ Steven P. Mandell